**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Ernest B. Jackson, ) | No. CIV 03-563-PHX-SMM |
| ) | |
| Plaintiff, ) | **ORDER** |
| ) | |
| v. ) | |
| ) | |
| ABC Nissan, Inc., et al., ) | |
| ) | |
| Defendants. ) | |
| ) | |
| ) | |

Before the Court is Defendant ABC Nissan, Inc.'s ("ABC Nissan") Motion to Enforce Settlement Agreement. (Dkt. 132).

**BACKGROUND**

Plaintiff Ernest B. Jackson ("Plaintiff") brought this action against Defendants ABC Nissan, Automotive Investment Group-Arizona, Inc. ("AIG"), and CTVT, Inc. ("Camelback Toyota"), alleging claims for hostile work environment and constructive discharge in violation of 42 U.S.C. § 1981. In an Order issued on August 7, 2006, the Court substantially narrowed the scope of this action by granting summary judgment in favor of defendants AIG and Camelback Toyota and limiting Plaintiff's claims against ABC Nissan to those arising solely during his first period of employment with the company. (Dkt. 104). In addition, the

Court awarded Camelback Toyota attorneys' fees in defending against Plaintiff's claims.[1] (Id.).

On August 24, 2006, Defendants AIG and Camelback Toyota filed a motion for entry of final judgment pursuant to Federal Rule of Civil Procedure 54(b); the Court denied the motion, finding that the request did not qualify as one of the rare instances warranting the immediate entry of final judgment. (Dkt. 111).

On April 10, 2007, ABC Nissan filed a Notice of Settlement with the Court stating Plaintiff and ABC Nissan "have agreed to settle all claims, including attorney's fees, against Defendant ABC Nissan." (Dkt. 130). The Notice of Settlement added, "[a]s the parties have discussed, Defendant ABC Nissan Inc. will prepare more formal settlement papers reflecting the terms of the present agreement and present it and checks in agreed-upon amounts to Plaintiff's Counsel in due course." (Id.). However, shortly after filing the Notice of Settlement, a dispute arose over the scope of the settlement agreement.

A series of e-mails track the negotiations leading up to the Notice of Settlement. ABC Nissan argues that the parties and essential terms of the settlement were clearly set forth in two e-mails sent between counsel for the parties, Stephanie K. Osteen ("Osteen"), co-counsel for ABC Nissan and Stephen G. Montoya ("Montoya"), counsel for Plaintiff, on April 6, 2007. The e-mails in question provide:

> Steve:
>
> Confirming the agreement we reached today by telephone, ABC Nissan will pay $150,000 to settle Mr. Jackson's claims against it. We will notify the Court today and will being preparing formal settlement papers next week, which will include the strict confidentiality provision we discussed.
>
> Please confirm your acceptance in writing by responding to this e-mail.
>
> Stephanie K. Osteen
> ---
> Stephanie, your understanding of our agreement to settle this case is correct. Please prepare separate settlement drafts, one in the amount of $100,000.00 made payable to Mr. Jackson and one in the amount of $50,000, made payable

---

[1] Plaintiff worked for ABC Nissan from November 1999 to March 2001, before transferring to Camelback Toyota in March 2001. Plaintiff returned to ABC Nissan in September 2001.

1  to my law firm, the legal name of which is "the Montoya Law Group." Have a happy holiday. Thanks. Stephen Montoya.
2  (Doc. Nos. 132, 139).

According to ABC Nissan, after the settlement agreement was reached, Plaintiff attempted to expand it to include additional claims and additional parties that were never discussed during settlement negotiations, nor mentioned in any of the written settlement communications leading up to the settlement agreement. Plaintiff, on the other hand, contends that the parties entered into a global settlement agreement and that the April 6th e-mails do not reflect the complete terms of agreement contemplated by the parties. Plaintiff contends that the e-mails omit two additional material terms: (1) a stipulation to dismiss, with prejudice, each side to bear its own costs and attorneys' fees, and (2) a confidentiality agreement, where Plaintiff would agree not to discuss his employment with ABC Nissan, AIG, or Camelback Toyota.

ABC Nissan moves the Court to enforce the terms of the settlement agreement outlined in the April 6 e-mails sent between Osteen and Montoya. In response, Plaintiff requests the Court to enforce his understanding of the settlement agreement, which contains the additional material terms that are absent from the April 6th e-mails. In the alternative, Plaintiff requests the Court to find the settlement agreement unenforceable as a matter on the grounds of a mutual misunderstanding.

The matter is now fully briefed and ready for the Court's disposition.

## LEGAL STANDARD

"An agreement to settle a legal dispute is a contract and its enforceability is governed by familiar principles of contract law." Jeff D. v. Andrus, 899 F.2d 753, 759 (9th Cir. 1990). The construction and enforcement of settlement agreements are governed by principles of local law, which apply to interpretation of contracts generally. Id. (Citation omitted). Here, the parties both rely on Arizona contract principles in their respective briefs, which the Court will construe as a consent to be bound by Arizona's law of contracts.

Under Arizona law, a contract exists once there is "an offer, an acceptance, consideration, and sufficient specification of terms so that obligations can be ascertained. L-

1 Line Builders, Inc. v. First Federal Savings & Loan Ass'n, 139 Ariz. 209, 212, 677 P.2d 1317, 1320 (App. 1983). "The construction of a contract is a question of law where the terms of the agreement are plain and unambiguous." Shattuck v. Precisions Toyota, Inc., 115 Ariz. 586, 566 P.2d 1332 (1977). The Court has a duty to "attempt to enforce [the] contract according to the parties' intent." Taylor v. State Farm Mut. Auto. Ins. Co., 175 Ariz. 148, 854 P.2d 1134, 1138 (1993). Intent is determined by interpreting the contract. See id. Although the court may not look to evidence that contradicts or varies the meaning of an agreement, Arizona has adopted the "Corbin approach," which allows the court to look at extrinsic evidence to determine the intent of the parties without a preliminary finding of ambiguity. Taylor, 854 P.2d at 1138, 1139-40.

## DISCUSSION

### A. The parties entered into an enforceable agreement

The instant matter presents no formation issues as the parties both agree that a settlement agreement was formed over the telephone on April 6, 2007, and that the formation of this agreement was memorialized in the e-mails exchanged between Osteen and Montoya later that same day. However, apart from agreeing that they entered into a settlement agreement on April 6, the parties agree on little else concerning the agreement and the negotiations leading up to its execution.

### B. The settlement agreement entered by the parties was not "global"

According to Plaintiff, the e-mails sent between Montoya and Osteen omit two material terms of the settlement agreement: (1) a stipulation to dismiss, with prejudice, each side to bear its own costs and attorneys' fees, and (2) a confidentiality agreement, where Plaintiff would agree not to discuss his employment with ABC Nissan, AIG, or Camelback Toyota. In Plaintiff's view, these additional terms make the settlement agreement "global" since it would encompass all of the parties to the action, past or present, and any of the remaining claims, including any claims for attorneys' fees that AIG or Camelback Toyota had against Plaintiff.

1  ABC Nissan argues that the April 6th e-mails exchanged between Osteen and Montoya contain all of the material terms of the agreement. According to ABC Nissan, the identity of the parties to the agreement, the specific claims being released, including claims for attorneys' fees, and all of the material terms of the settlement are expressed in the e-mails; thus, based upon the e-mails, the settlement agreement provides for Plaintiff to dismiss all of his claims against ABC Nissan in exchange for payment of $150,000 and a strict confidentiality provision. Importantly, ABC Nissan argues that the agreement does not extend to the Camelback Toyota or AIG and that it does not release any claims for attorneys' fee that either of those entities have against Plaintiff.

Based upon the plain language of the e-mail confirming the settlement agreement and the intent of the parties expressed in the correspondences leading up to the Notice of Settlement, the Court finds that ABC Nissan's interpretation of the settlement agreement is correct. First, Osteen's e-mail confirming the agreement, which outlined its material terms, clearly indicates that ABC Nissan and Plaintiff are the only parties to the agreement, "ABC Nissan will pay $150, 000 to settle Mr. Jackson's claims against it." (Dkt. 140, Exs. A-7 and A-8) (emphasis added). The agreement does not mention Camelback Toyota or AIG, nor does it make any reference to Camelback Toyota's outstanding claim for attorneys' fees. Montoya expressly confirmed that Osteen's understanding of the agreement, as outlined in her April 6th e-mail, was "correct." (Id., Ex. A-8; Dkt. at 5).

Second, while Plaintiff argues that both parties understood that any settlement agreement would necessarily include any claims for attorneys' fees that Camelback Toyota and AIG had against him, this argument is directly contradicted by the negotiations of the parties leading up to the settlement. On February 6, 2007, Plaintiff offered "to confidentially resolve this matter in consideration of a lump sum payment of $375,000.00, each side to bear its own costs and attorney fees." (Dkt. 132, Ex. A-1). Responding to this offer, Osteen faxed a letter to Montoya on February 13, 2007, the first line of which states, "I write this letter on behalf of ABC Nissan, Inc." (Id., Ex. 2) The letter makes no mention of Camelback Toyota or AIG, nor does it refer to any claims that either of those entities had against Plaintiff. This

- 5 -

1 letter, as well as all of the other correspondences sent from Osteen to Montoya during the
2 settlement negotiation, make it clear that Osteen was negotiating on behalf of ABC Nissan
3 only throughout their negotiations.  If Montoya believed that the settlement negotiation had
4 to include a release for any claims Camelback Toyota or AIG had against Plaintiff when he
5 contacted Osteen on February 6, 2007, then his belief should have been corrected when
6 Osteen declared "I write this letter on behalf of ABC Nissan, Inc." in her February 13, 2007,
7 letter. (Id.)  At the very least, his correspondences should have raised this issue at some point
8 if, as Montoya claims, he would never have agreed to anything less than a global settlement
9 in this matter.  However, the evidence indicates that Montoya never raised this issue before
10 the parties entered the settlement agreement and now, belatedly, he asks the Court to modify
11 the settlement agreement reached by inserting  additional terms which do not appear in the
12 e-mails confirming the attorneys' understanding of the agreement.  Courts are not permitted
13 to modify settlement terms or in any manner to rewrite agreements reached by parties. Jeff
14 D., 899 F.2d at 758.  Thus, the Court will reject Plaintiff's request to interpret the agreement
15 by adding the additional terms that he claims were omitted in the April 6th e-mails confirming
16 the agreement.

17 Finally, if, as Plaintiff contends, a claim for attorney fees by either AIG or Camelback
18 Toyota "could have significantly reduced or even rivaled the settlement amount," then the
19 Court finds it unreasonable that Montoya would not include at least some reference to this
20 additional term in his e-mail confirming Osteen's understanding of the settlement agreement.
21 (Dkt. 139 at 4).  Given the value of this claim, if it was part of the settlement agreement
22 negotiated by Montoya and Osteen, then there should have been an express reference to this
23 term in his e-mail confirming Osteen's understanding of the agreement.  Therefore, the Court
24 finds as a matter of law that the material terms of the settlement agreement reached by the
25 parties are clearly set forth in the April 6, 2007, e-mail sent by Osteen to Montoya and that
26 this agreement did not include Camelback Toyota or AIG or any claims for attorneys' fees
27 that they have against Plaintiff.

28 **C.  There was no mutual misunderstanding**

Plaintiff contends that, if the Court determines that there is a factual dispute regarding the settlement agreement reached by the parties, the agreement should be deemed unenforceable as a matter of law because there was a mutual misunderstanding between the parties. "A mutual mistake exists where there has been a meeting of the minds of the parties, and an agreement is actually entered into, but the agreement in its written form does not express what was really intended by the parties." Hill-Shafer Partnership, 165 Ariz. at 473, 799 P.2d at 814. "As long as the misunderstanding of the parties are reasonable under the specific circumstances of the case, a court may properly find a lack of mutual assent." Hill-Shafer Partnership, 165 Ariz. at 475, 799 P.2d at 816.

The Court finds that there was no mutual misunderstanding in the present case that would render the contract unenforceable as a matter of law. As discussed above, it is clear that Osteen was negotiating for ABC Nissan and only ABC Nissan throughout the settlement negotiations. As Osteen's April 6th e-mail confirming the terms of the agreement states, ABC Nissan agreed to settle Plaintiff's "claims against it." (Dkt. 140, Exs. A-7 and A-8) (emphasis added). None of the settlement correspondences provided to the Court ever mention any party other than Plaintiff or ABC Nissan.

In the present case, the Court finds that there was, at most, a unilateral mistake. As Montoya avers, he intended the settlement agreement to be a global settlement agreement, meaning that it would resolve the entire case, including Camelback Toyota's claim for attorneys' fees, so that the parties could move on with their lives."[2] ( Dkt. 139, Ex. 1, ¶¶ 14, 18). However, it is not the undisclosed intent of the parties to a contract with which the court is concerned, but rather the outward manifestations of their assent. Isaak v. Mass. Indem. Life Ins. Co., 127 Ariz. 581, 584, 623 P.2d 11, 14 (Ariz. 1981). Here, the outward expression of the parties' intent is that Plaintiff agreed to settle his claims against ABC Nissan only. Thus,

---

[2] ABC Nissan objected to paragraphs 14 and 18 of Montoya's affidavit, which states that Jackson was only interested in entering a global settlement agreement, on grounds that it violates the parol evidence rule. However, the Court finds this paragraph is admissible since it helps determine Plaintiff's intent. See Taylor, 854 P.2d at 1138, 1139-40. Therefore, ABC Nissan's objection is denied.

- 7 -

1 while there is evidence suggesting that there was a unilateral mistake, Plaintiff's mistake, by
2 itself, does not render the settlement agreement unenforceable. "A mistake of only one of
3 the parties to a contract in the expression of his agreement or as to the subject matter does
4 not affect its biding force and ordinarily affords no ground for its avoidance, or for relief,
5 even in equity. Nationwide Res. Corp. v. Massabni, 134 Ariz. 557, 564-565, 658 P.2d 210,
6 217-218 (Ariz. App. 1983). Plaintiff has not suggested that his understanding of the
7 settlement agreement was the product of any fraudulent or inequitable conduct on the part
8 of ABC Nissan. See Isaak, 127 Ariz. at 584, 623 P.2d at 14. (stating that "[i]n the absence
9 of mutual mistake, to reform an instrument because of the unilateral mistake of one party,
10 there must be fraud or inequitable conduct by the other party").  Therefore, while there is
11 evidence indicating that there was a unilateral mistake, the Court finds that there was not
12 mutual misunderstanding between the parties.

13 **D. The material terms of the settlement agreement executed by the parties**

14     Having found that a valid agreement exists between Plaintiff and ABC Nissan, the
15 Court finds it prudent to clearly set forth its findings regarding the interpretation of the
16 settlement agreement and its material terms. The material terms of, as well as the parties to,
17 the settlement agreement are set forth in Osteen's April 6th e-mail to Montoya: Plaintiff
18 agreed to dismiss his claims against ABC Nissan in exchange for $150,000 and a strict
19 confidentiality provision. Neither AIG nor Camelback Toyota were parties to the agreement
20 and, importantly, the agreement does not contain a release by which Camelback Toyota or
21 AIG would give up any claims for reasonable attorneys' fees against Plaintiff.
22 //
23 //
24

25                              **CONCLUSION**

26    Based upon the reasons set forth above, the Court finds that the settlement agreement
27 reached by the parties on April 6, 2007, and set forth in the e-mails exchnaged between
28 Montoya and Osteen that same day is enforceable as a matter of law. Accordingly,

- 8 -

1 **IT IS ORDERED GRANTING** ABC Nissan's Motion to Enforce Settlement Agreement. (Dkt. 132)

**IT IS ORDERED** that the Court will conduct a Status Hearing in this matter on **Monday, October 29, 2007, at 10:00 a.m.,** before the Honorable Stephen M. McNamee in Courtroom 605 at 401 West Washington Street in Phoenix, Arizona.

**IT IS FURTHER ORDERED** that the parties have 30 days from the date of this Order by which to file a stipulated dismissal, and that if such a dismissal is timely filed, the Status Hearing will be vacated.

DATED this 12th day of September, 2007.

_____
Stephen M. McNamee
United States District Judge